812 P.2d 1031

Elmer L. **FABER,** Trustee of Faber Brothers Construction Company, Inc., Defined Benefit Pension Plan, Plaintiff–Appellant,

v.

David **ALTHOFF** and Phillis J. Althoff, husband and wife; Rod Collins and Vicki K. Collins, husband and wife; Charles Riley, bankruptcy trustee for the estate of Robert Eve; John C. Leeper and Patricia A. Leeper, husband and wife; Kent H. Mulkey and Lorna D. Mulkey, husband and wife; Jesus Ortiz and Diedre Ortiz, husband and wife; Alvin S. Witt and Sophie T. Witt, husband and wife; Robert Dossey and Jane Doe Dossey, husband and wife, Defendants–Appellees.

No. 1 CA–CV 88–360.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 27, 1990.

Reconsideration Denied July 19, 1991.

Broening Oberg & Woods by Brian Holo-han, Phoenix, and Udall, Shumway, Black-hurst, Allen, Lyons & Davis, P.C. by David R. Schwartz, Mesa, for plaintiff-appellant.

Bonnett, Fairbourn & Friedman, P.C. by Andrew S. Friedman, and H. Sullivan Bunch, Phoenix, for defendants-appellees Althoff, Collins, Leeper, Mulkey, Ortiz, and Witt.

Ayers & Graham by Gregory A. Larson, Phoenix, for defendants-appellees Dossey.

## OPINION

JACOBSON, Presiding Judge.

This appeal presents the issue whether the failure to include in a foreclosure judgment against a partnership the right of the creditor to obtain a deficiency judgment precludes additional relief against the individual partners of the partnership.

Elmer Faber (plaintiff) appeals from the trial court's dismissal of his suit to collect from the individual partners (defendants) a deficiency remaining after plaintiff foreclosed his deed of trust against a partnership in a prior action. The trial court granted summary judgment in favor of defendants because the prior foreclosure judgment against the partnership did not contingently provide for recovery of any deficiency remaining after sale of the foreclosed property. The trial court concluded that such silence in the prior judgment

must be construed as a determination that plaintiff was not entitled to recover any deficiency, relying on *Greater Arizona Savings & Loan Association v. Gleeson*, 5 Ariz.App. 577, 429 P.2d 464 (1967), and that plaintiff was thus collaterally estopped from proceeding in a second action against the partners.

We are thus required to reexamine the *Gleeson* decision, and to construe and harmonize principles of statutory foreclosure law, partnership liability, and the doctrines of *res judicata* and collateral estoppel. We conclude that, under the circumstances of this case, plaintiff is not precluded from proceeding in a separate action to recover the deficiency from the individual partners who were not named or served in the prior foreclosure action.

## FACTS AND PROCEDURAL HISTORY

Plaintiff is a trustee for a defined benefit pension plan, which was the assigned beneficiary of a promissory note for a debt incurred in 1984 by Alma Gardens, a general partnership. The promissory note was secured by a deed of trust on land in Mesa, Arizona. The defendants in the present action are the individual general partners of Alma Gardens.

In April 1985, the partnership defaulted on its payments on the note. Plaintiff brought a foreclosure suit against the partnership, naming only the partnership, Alma Gardens; the individual partners were neither named nor served as defendants.[1] The complaint requested a judgment in the principal amount of $99,088.76, costs, attorneys' fees, a determination of the priority

of plaintiff's interest, a writ of execution to the county sheriff requiring that the property be sold and the proceeds distributed, and also requested that "[i]n the event there is any deficiency, the defendant, ALMA GARDENS, remain liable to the plaintiff to the extent of any deficiency suffered by plaintiff."

In January 1986, the court issued a minute entry granting plaintiff summary judgment in the foreclosure action, "as prayed for in Plaintiff's complaint." Plaintiff's former attorney submitted a proposed form of judgment, which the trial court signed on February 28, 1986. That judgment granted the following relief: judgment in the principal sum of $99,088.76, plus interest of $44.79 a day from July 25, 1985, until paid in full; plaintiff's title search fees and court costs in the amount of $262.00; interest on costs and fees of ten percent per annum from the date of judgment; a writ of execution to foreclose the deed of trust and sell the property through the Maricopa County Sheriff for distribution of funds; and an adjudication that plaintiff's lien is superior to defendant's claim to the property. The court also awarded plaintiff attorneys' fees pursuant to A.R.S. § 12–341.01. The judgment, however, was silent as to plaintiff's right to recover any deficiency remaining on the principal amount after the sale of the foreclosed property. This judgment became final.

The property was sold at a sheriff's sale for $50,000.00. Thereafter, plaintiff filed the complaint in the present case, naming as defendants the individual partners of Alma Gardens, to recover the deficiency

1. Defendant Robert Dossey was personally served as the agent of the partnership and appeared in the prior foreclosure action as attorney for the partnership. Although a partnership may be sued in the name the entity has assumed, Rule 17(j), Arizona Rules of Civil Procedure, "the summons and complaint may be served upon one partner." A.R.S. § 29–104. Although Dossey was not named as a defendant in the prior suit in his capacity as an individual partner, he was bound to the former judgment because "such service shall authorize a judgment against the partnership and against the partner actually served." *Id.*

At oral argument, plaintiff agreed that his claim against Dossey is distinguishable from his

claim against the other defendants in this case who were neither named nor served in the prior action, because Dossey was a party bound by the foreclosure judgment. Although Dossey has not appeared in this appeal, plaintiff now concedes that his claims against Dossey were properly dismissed by the trial court in this second action because of Dossey's appearance in the first action. We therefore do not address any issue involving Dossey, and we let stand that portion of the trial court's order that implicitly included a dismissal of plaintiff's claims against defendants Dossey in this action. *See* note 2, *infra.*

between the amount of the prior judgment and the sale proceeds—$64,952.95. Plaintiff alleged that defendants were liable for the resulting deficiency owing on the prior judgment because they were jointly and severally liable for partnership debts, including the 1985 promissory note.

Defendants Althoff, Leeper, Collins, Mulkey, and Witt (collectively, the Althoff defendants) filed a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure. They argued that plaintiff's failure to provide for a deficiency in the prior judgment against the partnership barred any claim that was based on the joint and several liability of the partners, citing *Gleeson*. Defendant Eve later joined in the Althoff defendants' motion and defendant Ortiz filed a similar motion, making the same arguments and requesting either dismissal under Rule 12(b)(6) or a grant of summary judgment. Plaintiff responded to both motions, arguing that he was not precluded by *Gleeson* from suing the individual partners on the deficiency.

On January 5, 1988, the trial court signed a formal order granting summary judgment on the Ortiz motion, finding *Gleeson* dispositive and ruling:

> *Gleeson* stands for the proposition that Plaintiff herein has had his day in court as to his entitlement to a deficiency judgment. That fact has been decided adversely against Plaintiff in its suit against Alma Gardens. Although the present Defendants were not parties to the lawsuit against Alma Gardens, this Court finds Plaintiff is estopped under

the doctrine of collateral estoppel from pursuing a deficiency judgment against the Defendants in this suit.

The judgment dismissed the complaint as to Ortiz, and awarded attorneys' fees.

On May 9, 1988, the trial court signed a similar judgment dismissing plaintiff's complaint "as to all Defendants" and awarding attorneys' fees to Ortiz, Eve, and the Althoff defendants.[2] Plaintiff timely appealed.

## DISCUSSION

### 1. *Foreclosure Law and the Gleeson Decision*

■ As a preliminary matter, we note that the parties dispute whether the 1986 amended version of A.R.S. § 33–725 applies to this case. Plaintiff argues that the statute in effect at the time the judgment was entered in the foreclosure suit should apply, while defendants argue that the amended statute in effect at the time the present action was filed should apply.[3] However, Arizona law has long held that the law in effect at the time of the execution of the mortgage applies to any foreclosure proceeding upon the mortgage. *See Kresos v. White*, 47 Ariz. 175, 54 P.2d 800 (1936) (law entitling plaintiff to a deficiency judgment in foreclosure proceeding at time mortgage was executed applied; rights conferred by that law became a vested right under the contract). We therefore apply the law in effect in 1984 when the deed of trust was executed, which is substantially the same as the statutory provi-

---

**2.** We note that the final judgment in this case did not refer specifically to Dossey, and that Dossey had no pending motion to dismiss before the court. However, the court, in previously denying plaintiff's motion for partial summary judgment against Dossey on the liability issue, specifically stated, "*Gleeson* is dispositive of plaintiff's claim against defendants Dossey." That fact, as well as the language dismissing "as to all Defendants," convinces us that the trial court implicitly dismissed plaintiff's claims against Dossey as well as those against the moving defendants, and correctly so. *See Johnson v. Collins*, 11 Ariz.App. 327, 464 P.2d 647 (1970) (a court may grant summary judgment in favor

of a non-moving party if the pleadings show no material fact dispute and the issues are all legal). In any event, as we have previously indicated, plaintiff now concedes that he has no viable claim against defendants Dossey in this action. *See* note 1, *supra*.

**3.** While we need not construe the amendment, in our opinion, no substantive changes have occurred in the statute. The amendment would appear to have been made to create a complete sentence out of a dependent clause by adding a subject, and to correct a typographical error by changing the word "make" to "take."

sion construed in the *Gleeson* decision.[4] That statute provides:

A. When a mortgage or deed of trust is foreclosed, the court shall give judgment for the entire amount determined due, and shall direct the mortgaged property, or as much thereof as is necessary to satisfy the judgment, to be sold.

B. Judgments for the foreclosure of mortgages and other liens *shall provide* that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject to the lien, and, except in judgments against executors, administrators and guardians, that a special execution issue to the sheriff or any constable of the county where the property is located, directing him to seize and sell the property as under execution, in satisfaction of the judgment. If the property cannot be found, or if the proceeds of the sale are insufficient to satisfy the judgment, then to make the money or any balance thereof remaining unpaid out of any other property of the defendant except as provided in §§ 33–729 and 33–730.

A.R.S. § 33–725 (emphasis added). Additionally, A.R.S. § 33–727(A) provides:

Except as provided [in the anti-deficiency statutes, not at issue in this case], if the mortgaged property does not sell for an amount sufficient to satisfy the judgment, an execution may be issued for the balance against the mortgagor where there has been personal service, or the defendant has appeared in the action.

In *Gleeson*, this court construed these two provisions to conclude: first, that a foreclosure judgment must specifically provide for the contingency of a deficiency, and that, in the absence of that provision, a deficiency judgment will not be read into the judgment; and second, if the complaint requests such a deficiency provision and the judgment fails to include it, then the matter is in effect litigated and decided adversely to the plaintiff whether or not the record supports such a ruling.

In *Gleeson*, as in this case, the plaintiff prayed for a foreclosure judgment in the entire amount of the secured debt, and "for any deficiency which may remain after applying the proceeds of the sale property applicable thereto to the payment and satisfaction of said judgment." 5 Ariz.App. at 577, 429 P.2d at 464. Defendants' answer alleged that no deficiency was owing. Plaintiff's motion for summary judgment was granted, but was not in the record on appeal in *Gleeson*. The formal written judgment, like the one here, did not provide for the collection of any deficiency. The court issued a decree of foreclosure and a special execution. After the sale of the property, plaintiff obtained a writ of general execution to collect the deficiency. Defendants obtained an order quashing the general execution, which was the basis of the appeal.

The *Gleeson* majority, in construing A.R.S. § 33–725, read the words "shall provide" to mean that "a foreclosure judgment shall specifically provide for the things set forth in said subsection B, except when as set forth in Section 33–727 there has not been personal service and the defendant has not appeared in the action."[5] *Id.* at 579, 429 P.2d at 466. The court concluded: "It therefore appears to us and we hold

---

**4.** The version of A.R.S. § 33–725 construed in the 1967 *Gleeson* decision did not contain the exceptions referring to the anti-deficiency statutes that were added in 1971. Because that amendment would not affect the holding in *Gleeson*, we consider the statute applicable here virtually identical to the one applied in *Gleeson*.

**5.** The court noted another exception: "where the documents themselves precluded a deficiency judgment." 5 Ariz.App. at 579, 429 P.2d at 466. That circumstance is not present in this case. Here, the deed of trust provided that, in the event of foreclosure: "To the extent permitted by law, an action may be maintained by

Beneficiary to recover a deficiency judgment for any balance due hereunder." Additionally, the promissory note provided: "All remedies conferred on the Note Holder by this Note or any other instrument or agreement shall be cumulative, and none is exclusive. Such remedies may be exercised concurrently or consecutively at the Note Holder's option." Thus, we find that the documents precluded neither a proceeding to collect a deficiency nor the filing of a separate action against the individual partners to collect a deficiency after foreclosure against the partnership.

that before a deficiency can be established on a mortgage or lien foreclosure, the judgment must specifically provide therein contingently for establishment of deficiency in the event the proceeds of the foreclosure sale are not sufficient to satisfy the judgment." *Id.* The court reasoned that to hold otherwise would incorporate into every foreclosure decree the right to collect a deficiency, even in the absence of personal service on the defendant. *Id.* Next, the court concluded that, because the complaint had requested a deficiency contingency and the court had failed to include it in the judgment, entitlement to a deficiency judgment was "in effect litigated and decided adversely to the plaintiff." *Id.*

A well-reasoned dissent in *Gleeson*, although agreeing with the majority that the writ of general execution was properly quashed, strongly objected to the majority's second holding, believing that plaintiff's entitlement to a deficiency had not been "adversely" decided. The dissent gave three reasons for this disagreement: (1) the judgment did not expressly state that the plaintiff was not entitled to a deficiency; (2) the plaintiff's right to relief was not controlled by the prayer in its complaint; and (3) as a matter of law, summary judgment could not have been granted to defendants on the deficiency issue. The dissent also pointed out that the majority's holding resulted in an unfair windfall to defendants by allowing them to escape repayment of a just debt. *Id.* at 580, 429 P.2d at 467.

Plaintiff here argues, first, that *Gleeson* is distinguishable and therefore does not apply to the facts of this case, and, second, that if *Gleeson* does apply, we should find that it was wrongly decided.

We do find *Gleeson* distinguishable from this case in several important respects. First, *Gleeson* involved one action with the same parties involved in both the foreclosure and deficiency actions. Here, however, we have two separate lawsuits involving different parties based on the joint and several liability of those parties for the same claim. Second, the record in this case includes the motion for summary judgment

in the first action, in which plaintiff requested a contingency in the judgment providing for a deficiency, and a minute entry granting that motion and ordering the relief prayed for in the complaint, which included the deficiency contingency. Thus, it is even more difficult in this case to conclude that the deficiency issue was "adversely decided" against plaintiff. This record clearly indicates that the deficiency language was inadvertently left out of the formal judgment by plaintiff's former counsel; no evidence exists that the trial court ruled against plaintiff on this issue in the prior action. Rather, the evidence here would indicate the trial court ruled in plaintiff's favor by awarding the full amount of the debt.

We do not believe, however, that these distinguishing features are enough to hold that *Gleeson* would not apply under the facts of this case. The fact remains, as defendants point out, that if the partnership's liability for the deficiency was extinguished by plaintiff's failure to include it in the foreclosure judgment, no derivative liability would flow to the individual partners in this suit under any theory presented. We thus must squarely face plaintiff's challenge to revisit the holding in *Gleeson* to determine if these defendants could be found individually liable for the deficiency.

We believe that *Gleeson* was wrongly decided, and we decline to follow its reasoning in this case. The major flaw in the majority opinion in *Gleeson* was that it ignored the practical operation of foreclosure law that was long ago described by the Arizona Supreme Court after a review of a statutory scheme remarkably similar to the existing one:

It will be seen by a careful examination of these sections that *there is but one judgment docketed by the clerk in case of foreclosure* of a mortgage given as security for a debt, and *it is for the full amount of the debt.* As ancillary thereto, if the complaint requests it, there is an order for foreclosure of the mortgage lien, and that a special execution issue for the sale of the mortgaged property. The statute then provides that

upon the return of the special execution and a credit being made on the judgment docket by the clerk of the amount made thereby, if the mortgaged property did not bring enough to satisfy the judgment, a general execution may be issued for the balance due in all cases where there has been personal service on the defendant or he has appeared in the action.

Technically speaking, *there is no such thing under our law as a "deficiency judgment"* in the sense that a formal judgment of that description is rendered by the court, or entered by the clerk for the amount not made by the sale of the mortgaged property. *There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist* after the issuance and return of the special execution, or even perhaps on one or more general executions in addition.... [I]f a foreclosure of the mortgage is asked plaintiff must first issue his special execution and exhaust the mortgaged property before he can levy on other property under a general execution. (Citation omitted.)

Notwithstanding this requirement, the judgment is from the date of its docketing a lien on all real estate of the judgment debtor, even though there has been no action under the special execution and the amount of any possible deficiency has not been ascertained.

*Bank of Douglas v. Neel*, 30 Ariz. 375, 380–81, 247 P. 132, 134 (1926) (emphasis added). In *Neel*, the court also pointed out that "if the mortgaged property does not pay the judgment a general execution may then issue without any further judgment being rendered by the court, the only showing required being that of the sheriff's return on the special execution." *Id.* at 382, 247 P. at 134.

█ The effect, therefore, of a judgment in a foreclosure action is to render a defendant liable for the *full* amount of the debt, not just that portion of the debt that will be satisfied from the proceeds of the sale of the property. Admittedly, this may be the effect if the proceeding were purely an *in rem* action and the defendant had not been

personally served, for then a plaintiff would be precluded by law from collecting on that judgment beyond the scope of the special execution ordering the sale of the foreclosed property. This is so, not because the judgment was satisfied by the sale, but because the court would not have personal jurisdiction over other assets of the defendant and no contingent deficiency could be contained in the judgment, either implicitly or explicitly. *See* A.R.S. § 33–727(A); *see generally Darnell v. Denton*, 137 Ariz. 204, 669 P.2d 981 (App. 1983). If, however, the named defendant is personally served or appears and the action is *in personam*, the court would have personal jurisdiction to issue a general execution against assets of the defendant other than the foreclosed property, should the special execution on the foreclosed property be insufficient to satisfy the judgment. The effect of the deficiency language in A.R.S. § 33–725 is to allow a plaintiff to obtain an *in personam* judgment in a proceeding to foreclose, which was historically an *in rem* proceeding, and to thereby authorize a court to award, in one proceeding, full equitable and legal relief. *Darnell*, 137 Ariz. at 207, 669 P.2d at 984. Construed in that context, we cannot agree, as stated in *Gleeson*, that A.R.S. § 33–725 intended to *preclude* a prevailing plaintiff from recovering the full amount of liability unless either the defendant was not personally before the court or another statute created an exception to the right to recover a deficiency. *See, e.g.*, A.R.S. §§ 33–729 and –730. The *Gleeson* court has simply erroneously misread a requirement into A.R.S. § 33–725 that is not contained therein.

█ Similarly, based on this reading of the statute, we reject defendants' argument that the remaining amount of the debt was "extinguished" by plaintiff's sale of the property under the writ of special execution. It is true that, in a pure *in rem* foreclosure proceeding where no personal jurisdiction lies over the debtor, a judgment of foreclosure will preclude the plaintiff from seeking relief beyond that afforded in the foreclosure judgment, because the underlying indebtedness has merged into that judgment and cannot form the basis for a

second action seeking additional relief on the same liability. *See Williams v. Williams,* 32 Ariz. 164, 256 P. 356 (1927); *Brenton State Bank v. Tiffany,* 400 N.W.2d 576 (Iowa 1987). However, when the court has personal jurisdiction over the debtor and the foreclosure judgment is for the full amount of the debt, a plaintiff's right to collect any deficiency remaining after sale of the property is implicit in that judgment, and has not been extinguished by the sale of the property. *See United Savings Bank v. Barber,* 135 Vt. 278, 375 A.2d 993, 994 (1977) ("Obligations secured by a mortgage are not extinguished by foreclosure proceedings and decree unless the mortgaged property is sufficient for that purpose").

■ We also reject defendants' final argument that allowing a plaintiff to seek to collect a deficiency after the foreclosure sale would violate the statutory requirement that the plaintiff must make an election of remedies. *See* A.R.S. § 33–722. That requirement merely prohibits "separate actions ... brought on the debt and to foreclose the mortgage" simultaneously, which would result in a potential double recovery. *See Bank of Douglas v. Neel,* 30 Ariz. 375, 247 P. 132 (1926). However, where liability for the full amount of the debt has been established in one foreclosure action, and a plaintiff seeks to collect that amount against a defendant's personal assets after the property has been sold, the plaintiff has not brought "separate actions," but has elected in the single foreclosure action to apply the security promised against the debt secured and, should that security fail to satisfy the debt, seek payment from other sources. *See, e.g., United American Life Ins. Co. v. Perillo,* 462 F.2d 254 (9th Cir.1972), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972). In such a case, the statutory requirement that a plaintiff elect between an action on the debt or an action to foreclose simply does not apply. *Id.*

■ We therefore hold that the trial court erred in concluding that plaintiff's right to a deficiency against the partnership was adversely decided in the prior foreclosure action against the partnership

simply because the formal judgment did not contain language providing for that contingency. Having concluded that the partnership's liability was not extinguished by the absence of a deficiency provision in the foreclosure judgment, we must next address the propriety of plaintiff's pursuing that liability in a separate action against the individual partners.

2. *Partnership Law; Joint and Several Liability*

Plaintiff argues that the trial court also erred in holding that the prior judgment against the partnership in the foreclosure action collaterally estopped plaintiff from bringing this separate action against the individual partners. Defendants argue that plaintiff's failure to join the individual partners in the prior action bars him from bringing subsequent litigation on the same claim against derivatively liable partners. We disagree.

■ By statute, all partners "are liable jointly and severally" for all partnership debts. A.R.S. § 29–215. A creditor is not required to exhaust partnership assets before proceeding against the partners individually on a partnership debt. *Catalina Mortgage Co. v. Monier,* 166 Ariz. 71, 800 P.2d 574 (1990). If partners are both jointly and severally liable, they may be sued in successive actions for the same claim. *Malisewski v. Singer,* 123 Ariz. 195, 598 P.2d 1014 (App.1979). The *Restatement (Second) of Judgments* (1982) points out that, as long as a plaintiff prevails in a prior proceeding against partners, additional suits may be brought against other partners based on partnership claims:

§ 60. *Partnership and Its Members*

(1) A judgment in an action by an injured person against a partner upon an obligation or liability incurred in the course of partnership business:

(a) If against the injured person, terminates his claim against another partner based upon that obligation;

(b) If in favor of the injured person:

(i) does not terminate a claim that he may have against another partner based upon that obligation.

. . . .

Comment (a) to this section explains that this rule follows the generally recognized rule that applies when an injured person recovers judgment against one of several co-obligors; a judgment in favor of one does not terminate a claim against another one. *See Restatement (Second) of Judgments* § 49. The only constraint on a plaintiff in the subsequent action is preclusion from relitigating the amount of damages awarded in the first judgment, and, if that judgment is satisfied or released, it discharges the liability of the partner in the second action. *See Restatement (Second) of Judgments* § 60(1)(b)(iii–iv); *see also Brunsoman v. Seltz,* 414 N.W.2d 547, 551 (Minn.App.1987) (collateral estoppel precludes relitigation of partnership liability in second suit against partner not included in prior judgment); *Fate v. Dixon,* 649 F.Supp. 551, 556 (E.D.N.C.1986) (payments for one such judgment must be credited against the other).

This generally recognized rule regarding the liability of co-obligors has been codified in Arizona as follows:

A. All parties to a joint obligation, *including ... partnership debts,* shall be severally liable also for the full amount of such obligations. An action may be brought against such parties jointly or separately, joining one or more, and *judgment may be given in each such action without barring an action against any party to the obligation not included in the judgment,* and without releasing any party against whom the action was not brought.

A.R.S. § 44–141(A) (emphasis added); *see also Catalina Mortgage, supra.* Thus, the doctrines of merger and bar on which defendants rely to argue that plaintiff should be precluded from bringing this suit because he obtained a judgment against the partnership in the foreclosure action, clearly do not apply when a partnership debt for which the parties are jointly and severally liable is involved. We therefore find no impediment to plaintiff's proceeding in a separate action against the individual partners to recover the deficiency remaining on a partnership liability for the full amount of a debt that was adjudicated in plaintiff's favor in the foreclosure action.

CONCLUSION

We hold that plaintiff's entitlement to a deficiency resulting when the foreclosed property sold for less than the amount of the judgment against the partnership was not adversely litigated in the prior action. Because the partnership liability was established in that action for the full amount of the debt, plaintiff may proceed under Arizona law in separate actions to collect the deficiency from the jointly and severally liable individual partners. The trial court order dismissing plaintiff's claims against defendants is reversed, except as to Dossey, and this matter is remanded for further proceedings consistent with this opinion. The trial court's order awarding defendants' attorneys' fees is vacated. Because no request for attorneys' fees has been made in this appeal, the parties shall bear their own fees on appeal.

EHRLICH and EUBANK, JJ., concur.